IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL M. COTTRELL,

        Plaintiff,                    No. CIV S-09-824 JAM KJM P

    vs.

M. WRIGHT, et al.,

        Defendants.            FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, alleging that defendants Wright, Hayes and Sisson used excessive force against him during a cell extraction on September 17, 2008. Defendants have filed a motion to dismiss on the ground that plaintiff has not exhausted administrative remedies.

I. <u>The Exhaustion Requirement</u>

        The Prison Litigation Reform Act (PLRA) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Conditions of confinement" subject to exhaustion have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prisons." 18 U.S.C. § 3626(g)(2); <u>Smith v. Zachary</u>, 255 F.3d 446, 449 (7th Cir. 2001); see also <u>Lawrence v. Goord</u>, 304 F.3d 198, 200

1

(2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. Jones v. Bock, 549 U.S. 199, 218-19 (2007); Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation (CDCR), which instructs the inmate to describe the problem and outline the action requested. The grievance process, as defined by California regulations, has one informal and three formal levels of review to address an inmate's claims, subject to certain exceptions. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5.

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ," Woodford v. Ngo, 548 U.S. 81, 90 (2006). However, an inmate is required to exhaust those remedies that are available; for a remedy to be "available," there must be the "possibility of some relief. . . ." Booth, 532 U.S. at 738. Relying on Booth, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for a failure to exhaust non-judicial

remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. Defendants bear the burden of proving plaintiff's failure to exhaust. Id. at 1119. To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case,. . . . With regard to the latter category of evidence, information provided the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

Brown, 422 F.3d at 936-37.

II. Exhaustion In This Case

Defendants allege that plaintiff did not receive a decision from the Inmate Appeals Branch, the third formal letter of review, on any grievance alleging the excessive use of force on September 17, 2008. Plaintiff counters that his attempts to exhaust administrative remedies on the excessive force claim were stymied by a series of official actions and inactions.

P. Statti is the Appeals Coordinator at High Desert State Prison. Motion To Dismiss (MTD), Declaration of P. Statti (Statti Decl.) (Docket No. 26-5) ¶ 1. Statti has reviewed plaintiff's grievance history from September 17, 2008 through March 25, 2009, and located one grievance concerning excessive force, which was assigned Log No. HDSP-08-03228. Statti Decl. ¶ 4 & Ex. A (print-out of grievance list). Exhibit B to Statti's declaration is the grievance file for HDSP-D-08-03228, although that log number is not written on plaintiff's initial grievance itself. Nevertheless, the grievance describes the incident of September 17, 2008, asks for a "thorough investigation," suspension of the personnel involved, a bed move and transfer, and a copy of the use of force policy. Id., Ex. B.

/////

3

Statti's records indicate plaintiff sent his grievance initially to the Office of Internal Affairs. Id., Ex. B at 13.[1] Plaintiff agrees that he mailed his 602 to the Office of Internal Affairs rather than providing it to the HDSP appeals office. Opposition (Opp'n) (Docket No. 29) at 3. Although defendants do not explain how the grievance ultimately arrived at the appeals office at High Desert State Prison, the form itself shows a stamped "received" date of December 2, 2008, and a handwritten "received" date of December 5, 2008. See Statti Decl., Ex. B at 10-11; see also id. ¶ 4 (assuming a receipt date of December 5).[2]

This grievance was processed as a staff complaint and resolved in a memorandum dated January 14, 2009, but provided to plaintiff on January 20, 2009. Id. ¶ 4 & Ex. B at 8-9. The response notes that the grievance has been "partially granted" at the first level in that "an inquiry into your allegation has been conducted." Plaintiff was advised that:

> ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, the details of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

Id., Ex. B at 9. Ultimately, the determination was made that "staff did not violate CDCR policy." Id. The last paragraph on the form advised plaintiff:

> Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

Id. at 9.

---

[1] Page references are to those assigned by the court's CM/ECF system.

[2] There is also a stamped date of January 20, 2009, which appears to be the date the first level review was returned to plaintiff. Defendants have not offered any explanation for the two stamped "received" dates or the discrepancy between the stamped date of December 2 and the handwritten date of December 5.

1            Plaintiff alleges that he attempted to take his grievance to the second level, but
2   because he was in administrative segregation, he was unable to put appeals forms in the appeals
3   box or deliver them personally to the appeals coordinator. Opp'n (Docket No. 29-1) at 1, ¶ 2.[3]
4   He avers that on January 25, 2009, he filled out section F of the grievance form and placed the
5   appeal in a CDCR "U-Save-Em" envelope, which he gave to Nurse Chaney as she passed out
6   medication. Id. at 5 ¶¶ 1-2. He told the nurse that the envelope contained a second level appeal.
7   Id. at 5 ¶ 3. Nurse Chaney was accompanied by Correctional Officer Dansby. Id. ¶ 4.

8            Correctional Officer Dansby avers that his duties included the collection of
9   inmate mail, including 602 appeals, at a 9:00 p.m. pickup. MTD, Decl. of Dansby (Dansby
10  Decl.) (Docket No. 26-2) ¶ 3. Dansby does not recall making rounds with a nurse on January 25,
11  2009, particularly since medical staff make their rounds at 7:00 p.m. Id. ¶¶ 4-5.

12           Plaintiff avers he was in the law library on February 25, 2009, and asked
13  Correctional Captain P. Cochrane[4] about the pendency of the second level review of Log No.
14  HDSP-08-03228. Opp'n (Docket No. 29-1) at 3, ¶¶ 1-2. Captain Cochrane told plaintiff he had
15  seen the appeal and advised plaintiff to be patient because it was being processed. Id. at 3 ¶ 3 &
16  4 ¶ 5. Cochrane, now an Associate Warden at California Correctional Center, avers that as part
17  of his duties when he was a Facility Captain, he reviewed appeals from his facility. MTD, Decl.
18  of Cochrane (Cochrane Decl.) (Docket No. 26-3) ¶¶ 1, 3. Although he does not remember the
19  exchange with plaintiff, when an inmate asked about an appeal, Cochrane's practice was to say
20  that submitted appeals were being processed and would be answered. Id. ¶¶ 2-3.

21           Plaintiff began a series of letters to the Inmate Appeals Branch (IAB), asking for
22  assistance in securing a decision at the second level. See Opp'n at 24, 26. On November 16,

---

[3] Despite defendants' claim that plaintiff has not provided the court with a declaration, Reply at 2, plaintiff in fact has supported his opposition with three separate declarations. The court identifies them by docket number and page number to avoid confusion.

[4] Plaintiff spells the officer's last name as "Cochran."

5

2009, the IAB accepted HDSP Log No. 08-03228 for review and on December 24, 2009, rejected it because it had not gone through the second level of review.  MTD, Declaration of D. Foston (Foston Decl.) (Docket No. 26-4) ¶ 7; Opp'n at 28-31.  This rejection was accompanied by a letter from the IAB, advising plaintiff that the appeal was rejected because it had not gone through the second level of review.  The letter continued, ". . . only the original appeal form is accepted at the Director's Level of Review.  If you do not have the original appeal, see your Appeals Coordinator for a replacement 'Treat as Original' appeal, stamped in red ink by the institution."  Opp'n at 27.

Plaintiff then sought an interview with the Appeals Coordinator at HDSP and explained his understanding that IAB had given him permission to exhaust the second level of review.  This request was rejected because the "appeal is to [sic] late to be processed. . . ."  Id. at 33.

III. Analysis

　　A. Evidentiary Considerations

Defendants argue this court cannot consider much of plaintiff's evidence because it is not authenticated or is hearsay and because plaintiff has not tied his documentary evidence to the grievance identified as HDSP D-08-3228.  Whether or not plaintiff has properly authenticated the documents he received from the IAB, this court can and does determine they are what they purport to be by examining their distinctive characteristics.  Fed. R. Evid. 901(b)(4). Whether or not plaintiff's letters to the IAB are hearsay, plaintiff could have included a description of the steps he took to exhaust in his declaration, rather than providing copies of the letters themselves; the court will consider the letters.  Cf. Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

Plaintiff does recount what then-Captain Cochrane told him about his grievance.  Some of what Cochrane said – that the appeal was being processed – is admissible for its effect on the listener, to explain why plaintiff waited several months before attempting to seek further

6

relief. Moreover these statements are echoed by Cochrane's own account of what he told inmates who inquired about the status of their appeals. The court will consider these statements to the extent they are relevant.

Finally, defendants' claim that plaintiff has failed to tie his evidence to the pertinent grievance is contradicted by the record: his letters contain the log number and he identifies it as the appeal from his excessive force grievance in his declarations.[5]

### B. Application Of Law To Factual Record

Whether plaintiff has satisfied the exhaustion requirement depends on whether remedies were available after the first level decision. Plaintiff contends they were not because correctional officials exceeded the time limits for the second level review, without which he could not proceed to the third level, and that he waited to follow up on the progress of the review based on then-Captain Cochrane's assurance that the appeal was being processed.

In Booth, the Supreme Court recognized that for a remedy to be "available," there must be the "possibility of some relief. . . ." 532 U.S. at 738. Relying on Booth, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

Brown, 442 F.3d at 935. In Brown, the inmate filed a grievance claiming that Valoff had used pepper spray against him. The grievance was denied at the first level, but the second level decision was "partially granted" because the incident was referred to the Office of Internal Affairs for a staff misconduct investigation. Id. at 931. The second level decision also informed

---

[5] Plaintiff has submitted a number of screen-out notices, plus a copy of a duplicate grievance on excessive force that he says he attempted, unsuccessfully, to submit. Defendants argue that plaintiff has not tied any of this to his attempts to exhaust, arguing without citation to any authority that the appeals coordinator would not screen out a grievance about excessive force. The court ultimately does not need to rely on the screen-out notices to resolve the issues presented by the motion.

Brown that monetary compensation was "beyond the scope of the appeals process." Brown did not seek a Director's Level review.

The Ninth Circuit found that Brown had exhausted all available remedies even though he did not seek a Director's Level determination; after Brown's appeal was "partially granted" at the second level and he was informed that he would not learn if any disciplinary action against Valoff was determined to be necessary, no further remedies were available. The court relied in part on the CDCR Administrative Bulletin's definition of the "partially granted" determination of an appeal:

> Whether an appeal directed to the staff complaint procedure is given a "granted" or "partially granted" response depends not on whether there remains some possibility of obtaining relief through the appeals process, but on "the action requested by appellant." Here, the "action requested by the appellant" was monetary compensation, which was, as the response informed him right after telling him that his staff complaint would be thoroughly investigated, "beyond the scope of the appeals process . . . ."

Id. at 939; see also Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), overruled on other grounds, Jones v. Bock, 549 U.S. at 223; Brady v. Attygala, 196 F.Supp.2d 1016 (C.D. Cal. 2002).

In Brown, the Ninth Circuit also considered the case of a second inmate, Hall. See Brown, 422 F.3d at 932. Hall had filed a grievance about an alleged beating and improper use of pepper spray against him. He asked for monetary compensation and the removal of the officers involved. He also complained he had not received adequate medical treatment and had lost property during the cell extraction. Hall's second level decision noted that it would be treated as a staff complaint, but "if the appeal contains other issues . . . the other issue(s) must be appealed separately." Id. at 933. It also noted that his appeal was denied and he was advised to appeal to the Director's Level if he was dissatisfied. Id.

The Ninth Circuit found that Hall had not complied with the exhaustion requirements of the PLRA because he did not pursue a further appeal of the medical care claim,

1  which was included in the civil rights complaint, and because his appeal had been denied. The
2  denial, according to administrative policy, suggested some avenues of relief might still be open
3  to him. Id. at 941-42.

4          In this case, plaintiff's complaint raises only the Eighth Amendment claims
5  stemming from the alleged use of force against him during the cell extraction on September 17,
6  2008. In Log No. HDSP D-08-3228, he complains about the alleged excessive force on
7  September 17, 2008, and asks that the incident be investigated. There are no additional issues
8  identified in either the grievance or the complaint.

9          At the first level, plaintiff's grievance was partially granted, the grievance was
10 treated as a staff complaint, and the incident was investigated. Plaintiff did ask that the staff
11 involved be suspended and that he be transferred; the first level review informed him that his
12 request for "administrative action regarding staff" was beyond the scope of the appeals process.
13 As in Brown, plaintiff's request for an investigation was granted and his request that the staff
14 involved be suspended was deemed to be beyond the appeals process. Unlike the situation in
15 Brown, plaintiff was told he could appeal further, but neither the letter informing him of the
16 resolution of the first level of review, nor defendants now, suggest what relief was available
17 through the appeals process once a staff complaint has been deemed unfounded. Because it is
18 defendants' burden under Wyatt v. Terhune, as explained in Brown in Valoff, to demonstrate
19 what relief remained available to plaintiff should he have continued to pursue his appeal, a
20 burden defendants have not borne, the court finds plaintiff has exhausted his administrative
21 remedies as to the issues in the instant complaint.

22         Even if there were further action on the staff complaint that appeal to the second
23 and Director's levels of review could have sparked, defendants have not shown that such
24 remedies were available in this case. Plaintiff avers he gave the appeal to a nurse and told her
25 what it was. Defendants have presented the declaration of the correctional officer, whom
26 plaintiff identifies as the nurse's escort, but have not submitted a declaration from the nurse

1  herself or otherwise rebutted plaintiff's claim that he presented his grievance for further review
2  within the time limits established by the regulations.  In addition, defendants have not pointed
3  the court to anything suggesting there was an exclusive method of transmitting grievances and
4  appeals or argued that plaintiff failed to follow established procedures by giving his appeal to the
5  nurse for further transmission.  See 15 Cal. Code Regs. § 3084. 2 (c) ("Place of filing.  At the
6  formal levels, the appeal shall be forwarded to the appeals coordinator within the time limits
7  prescribed in section 3084.6.").  The loss of a grievance provided to correctional officials also
8  renders further remedies unavailable.  Dole v. Chandler, 438 F.3d 804, 811 (7th Cir. 2006)
9  (when plaintiff's grievance was lost by correctional officials, available remedies exhausted).

10         Finally, even if the court assumes that the grievance reached the second level of
11  review, the delay in processing the appeal rendered further remedies unavailable.  Under the
12  regulations, a second level decision is to be completed within twenty working days of receipt of
13  the grievance and written notice must be given to the inmate if there will be exceptional delay in
14  responding.  15 Cal. Code Regs. §§ 3084.6(b)(3) & (6).  As this court has recognized, a delay in
15  processing might show the unavailability of remedies when the delay in fact prevents the inmate
16  from proceeding further.  Womack v. Bakewell, 2010 WL 3521926, at **4-5 (E.D. Cal. 2010)
17  (collecting cases about delay); see also Sapp v. Kimbrell, ___ F.3d ___, 2010 WL 3733581, at *6
18  (improper screen-outs render administrative remedies unavailable).  In this case, there was no
19  written notice, yet there was a lengthy delay that had the result of preventing plaintiff from
20  exhausting administrative remedies: plaintiff's attempt to secure a Director's Level
21  determination was rebuffed because he had not secured a decision at the second level.
22  Defendants have not borne their burden of demonstrating plaintiff's failure to exhaust
23  administrative remedies.

24         IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (docket
25  no. 26) be denied.
26  /////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 17, 2010.

_____
U.S. MAGISTRATE JUDGE

2
cott0824.57